UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE


CIVIL ACTION NO. 07-238-GWU


ROBIN M. DANIELS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robin M. Daniels, filed her current applications for DIB and SSI on July 26, 2004.  She had previously filed DIB and SSI applications in 1989, and received benefits through September, 1996.  The termination was upheld in a decision by an Administrative Law Judge (ALJ) issued on May 27, 1999.  (Tr. 12, 297-304).

After the plaintiff's 2004 applications were denied initially and upon reconsideration, Mrs. Daniels received a new hearing from an ALJ, who determined in an October 26, 2006 decision that, while she had "severe" impairments consisting of back and neck pain and migraine headaches, she retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 15-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47, post-high school education, and lack of work experience in the previous 15 years could perform any jobs if she were limited to "light" level exertion and also had the following non-exertional restrictions.  (Tr. 291).  She: (1) could never climb ladders, ropes, or scaffolds; (2) could occasionally stoop and crawl; (3) could perform no overhead reaching; (4) needed to avoid work environments with extreme cold temperatures and odors; and (5) had the ability to deal with unexpected changes, work without interruptions, and sustain attention and concentration.  (Id.).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 291-2).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Although Mrs. Daniels continued to allege disability since 1988 (Tr. 60), the ALJ correctly noted that her condition through May 27, 1999 had already been adjudicated by the previous ALJ's decision of that date, and the relevant period for purposes of the present application was May 28, 1999 through the date of the decision.  (Tr. 12-13).  Her Date Last Insured (DLI) for purposes of the DIB application was September 30, 2001, meaning that she was required to show

disability before that date in order to be entitled to DIB.  Her SSI application is not affected.

Mrs. Daniels alleged disability due to a variety of problems, including back and neck impairment, "bone disease," colitis, carpal tunnel syndrome, migraine headaches, vascular swelling, anxiety, and depression.  She alleged that her existing neck and back conditions had worsened due to subsequent motor vehicle accidents in 2000 (Tr. 116) and 2004 (Tr. 90).  She complained of being in constant pain, which radiated down her legs, and she could not sit or stand for more than 20 to 30 minutes.  (Tr. 260-3).  She was also receiving epidural injections for neck pain, without relief.  (Tr. 264).  She also had poor balance, a lack of dexterity, syncope, migraine headaches, high blood pressure, and colitis.  (Tr. 270-1, 282-4).  She was on medication for high blood pressure, but felt that it made her irritable.  (Tr. 285).  Mrs. Daniels testified that she declined to take any drugs for migraine headaches, despite having three or four of them a month, on average.  (Tr. 287-8).  She had been tried on the medication Zoloft, but stopped taking it approximately six months before the hearing, and felt that she was becoming more "hateful" every day.  (Tr. 286-7).

The medical evidence in the transcript includes reports from a neurosurgeon, Dr. Joseph Williams, who examined Mrs. Daniels in February, 2003 for complaints of memory problems, neck, and back pain after hitting her head in an automobile

accident.  (Tr. 149).  Although noting that the plaintiff was somewhat depressed, Dr. Williams found relatively few abnormalities on examination apart from tenderness and a limitation of a range of motion in the neck.  (Tr. 150).  The lumbar spine was tender with no spasm and a normal range of motion.  Mrs. Daniels did have decreased sensation on the left side of her face and the entire left side of her body, but Dr. Williams also stated that her right leg seemed more involved than her left leg.  (Id.).  He planned to obtain tests.  Subsequently, the plaintiff was seen by Dr. Denes Martonffy, a colleague of Dr. Williams, who commented that MRI films showed some cervical degenerative changes (Tr. 86, 148), and prescribed medications "which allow her to continue on an ongoing basis."  (Tr. 148).  Dr. Martonffy noted in July, 2003 that the plaintiff was stable and well controlled on medication, and she was seen in follow-up for medication refills, but, through at least July 30, 2004, she declined offers of epidural injections.  (Tr. 143-6).  He recommended counseling at a Comprehensive Care Center due to complaints of depression, and reviewed a note from this source in April, 2004 stating that the plaintiff had been evaluated and released.  (Tr. 144-5).  At this point, the plaintiff was a full-time student at a community college.  (Tr. 144).  No functional restrictions are suggested.

The plaintiff was involved in another motor vehicle accident on May 29, 2004 (Tr. 90), but her family physician, Dr. Charles Hardin, reviewed cervical and lumbar

x-rays showing no more than mild degenerative changes and assessed only cervical and lumbosacral strain.  (Tr. 99-100).  He instructed his patient to avoid "heavy" and repetitive lifting.   (Tr. 99).   These restrictions were accommodated in the hypothetical question, although there is no indication that they were intended to be permanent.

Dr. Bobby J. Kidd conducted a consultative examination of Mrs. Daniels on October 14, 2004 and noted no lumbar or cervical tenderness, spasm, or limitation in range of motion.  (Tr. 124-5).  She was able to walk on her heels and toes, perform tandem gait, and squat without difficulty.  (Tr. 125).  There was a full range of motion of the shoulders, with complaints of pain on adduction, but an x-ray of the left shoulder was normal.  (Tr. 125, 127).  No functional restrictions are suggested. Dr. Martonffy examined the plaintiff approximately two weeks later, and noted that the plaintiff alleged being in another motor vehicle accident on October 18, just four days after Dr. Kidd's examination.  (Tr. 142).  Dr. Martonffy found cervical and lumbar tenderness with spasms, as well as positive straight leg-raising tests and positive Spurling's testing bilaterally.[1]  He planned to obtain additional testing, but there is no evidence of specific follow-up, and again no functional restrictions are given.  (Id.).

---

[1]A positive Spurling's test indicates nerve root compression.  Taber's Cyclopedic Medical Dictionary (20th Ed. 2005).

Beginning on November 26, 2004, Mrs. Daniels had an extensive series of work-ups following an incident in which she "blacked out" on the commode and fell off. (Tr. 152). Dr. Franklen K. Belhasen examined the plaintiff and noted only mild generalized abdominal pain, with no back tenderness and an adequate range of motion for the patient's age. (Tr. 155). A chest x-ray and CT scan of the head were essentially normal. (Tr. 160, 164). A CT scan of the pelvis raised the possibility of inflammatory bowel disease. (Tr. 161). An echocardiogram was normal. (Tr. 166). Dr. Belhasen discharged the plaintiff with orders for an outpatient MRI of the brain, an appointment to see another physician for rectal bleeding, and an order to stay at home until she was followed up in four days. (Tr. 167). Carotid duplex scanning was normal, and an echocardiogram was largely normal although further testing was recommended. (Tr. 169-70). The plaintiff was evaluated for chest pain and some shortness of breath on December 30, 2004, but a myocardial infarction was ruled out by enzymes. (Tr. 177-8). She was discharged with a diagnosis of "atypical chest pain." (Tr. 189). A follow-up nuclear cardiolite stress test was normal, as was an echocardiogram, but in view of the fact that tilt table testing was positive for "vasodepressor syncope" her cardiologist, Dr. Mubashair Qazi, stated that he was starting a blood pressure medication which would help both the syncope and the blood pressure (Tr. 196). He stated that he believed that her chest pain was non-cardiac and could be due to blood pressure problems. (Id.).

A state agency physician, Dr. John Rawlings, provided functional capacity assessments for the periods both before and after the DLI.  Before the DLI, he concluded that Mrs. Daniels was limited to light level exertion with occasional stooping, limited overhead reaching, and a need to avoid concentrated exposure to extreme cold and vibration.  (Tr. 202-9).  He considered the fact that Dr. Hardin had placed limitations on lifting, bending, and carrying.  (Tr. 208).  After the DLI, Dr. Rawlings concluded that the same limitations would be in effect except for an additional restriction to never climbing ladders, ropes, and scaffolds.  (Tr. 211).

Dr. Rawlings was a reviewer with access to all or nearly all of the medical evidence, and who clearly explained the basis for his conclusions.  No examining or treating physician clearly provided restrictions of a permanent nature which exceeded those given by Dr. Rawlings.  Therefore, the ALJ's decision to accept these factors and provide them to the VE in the hypothetical question is supported by substantial evidence.

Counsel for the plaintiff argues on appeal that the ALJ did not include numerous findings by examining sources, including the results of the MRIs ordered by Dr. Williams and the medical history taken by Dr. Belhasen.  Counsel even attaches significance to the fact that the plaintiff told Dr. Belhasen that she had not been vaccinated against chicken pox as a child. Memorandum in Support of Plaintiff's Motion for Summary Judgment, pp. 4-7.  However, the Sixth Circuit has

repeatedly confirmed that the hypothetical question need only include the plaintiff's actual functional limitations, and not a laundry list of her diagnoses or allegations. Varley, 820 F.2d at 780.

The plaintiff also objects that the ALJ barely referred to the examinations or findings of several of her physicians, such as Dr. Belhasen and Dr. Hardin.  Dr. Belhasen was a one-time examiner, and Dr. Hardin saw the plaintiff on only a few occasions during the relevant period.  The Sixth Circuit has noted the Commissioner's regulations do not require the ALJ to give good reasons for rejecting medical opinions of non-treating sources.  Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007).  Thus, the ALJ's failure to discuss these physicians would not be reversible error even if they had provided greater restrictions than given in the hypothetical question.

Counsel also makes a vague suggestion that the plaintiff's conditions should have been considered in combination to determine if one of the Commissioner's Listings of Impairment was met, but does not even hint which Listing would be involved.  The ALJ's statement that the plaintiff had no impairment or combination of impairments which would meet or medically equal a listed impairment (Tr. 16) is an adequate indication that he considered the issue.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

14

The plaintiff also suggests that Dr. Rawlings did not have enough information to complete his functional capacity assessments based on a notation attached to the pre-DLI assessment that he needed more information regarding her recent syncopal episodes and positive tilt table test. (Tr. 210). The post-DLI assessment, completed ten days later, shows that Dr. Rawlings did have the test results, at least through December 24, 2004, available. (Tr. 212-13). As previously noted, Dr. Qazi had noted on January 13, 2005 that the plaintiff was being started on medication for her syncope and high blood pressure, which he expected to be helpful for both conditions. (Tr. 196). This additional evidence would not be expected to change Dr. Rawlings' opinion and does not even remotely establish the presence of greater permanent restrictions than found by the ALJ.

Counsel for the plaintiff makes only a passing reference to the plaintiff's mental status in the form of possible concentration problems, mostly in relation to syncope. The court notes, however, that Dr. Martonffy had indicated that the plaintiff was released by the Comprehensive Care Center, and a consultative psychological examination by Dr. Dennis Sprague, while including a depressive disorder, generalized anxiety disorder, and pain disorder in a list of diagnostic impressions, found no evidence of more than mild to moderate impairment in activities (Tr. 119-20), and two state agency reviewing psychologists concluded that the plaintiff did not even had a "severe" mental impairment (Tr. 128, 219). Dr.

Sprague's report could reasonably have been interpreted as concluding that the plaintiff would be only mildly impaired, since he did not definitely state that there would be moderate restrictions in any area, as opposed to the possibility of moderate restrictions.  In any case, the plaintiff does not specifically raise this issue on appeal.

The decision will be affirmed.

This the 3rd day of September, 2008.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**